E-FILED
Friday, 03 February, 2023  12:19:12 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOHN LOY,                                    )
   Plaintiff,                              )
                                     )
vs.                                          )        Case No. 19-4226
                                       )
GREGG SCOTT, et al.,                         )
   Defendant                               )

SUMMARY JUDGMENT ORDER

This cause is before the Court for consideration of Defendants Sharon Coleman-Weems, Joseph Hankins, Juan Perez, and Greg Scott's Motion for Summary Judgment. [130].  For the following reasons, the motion is GRANTED. [130].

I. BACKGROUND

The Plaintiff is a civil detainee at the Rushville Treatment and Detention Center. After merit review, the Court found Plaintiff had stated the following two claims against nine Rushville Defendants:

> 1) Defendants Dr. David Marcowitz and Housing Committee Members Paula Lodge, Juan Perez, Joseph Hankins, and Lisa Logsden violated Plaintiff's Fourteenth Amendment rights when they failed to provide Plaintiff a low bunk permit due to his age and arm injury *prior* to his June 8, 2019 fall; and,

> 2) Defendants Dr. David Marcowitz, Gregg Scott, Paul Vincent, Sandra Simpson, and Sharon Coleman-Weems violated Plaintiff's Fourteenth Amendment rights when they failed to provide a low bunk permit for three weeks after the June 8, 2019 fall even though the Defendants knew the 70-year old was recently injured. *See* October 13, 2020 Case Management Order; January 13, 2021 Text Order; February 8, 2021 Text Order.

On March 22, 2022, the Court granted Defendants Lodge, Simpson, Vincent, Marcowitz, and Logsdon's motions for summary judgment. *See* March 22, 2022 Order.

After delays in providing discovery responses, the remaining Defendants were ultimately allowed to file a dispositive motion which is currently before the Court. *See* March 22, 2022 Order, p.  23-26.

## II. FACTS

The following background facts are taken from the March 22, 2022 Summary Judgment Order:

Plaintiff has been civilly detained at the Rushville Treatment and Detention Center since January 5, 2001. (Def. Mot., [96], Plain. Depo., p. 28).

Rushville residents who want a low bunk assignment must get approval and a low bunk permit from the facility doctor.  (Def. Mot.,[96], Marc. Aff., p. 2).

Plaintiff says he wrote to the Rooming Committee about his need for a low bunk permit in January of 2017 and again sometime after September of 2018. (Def. Mot.,[96], Plain, Depo., p. 39). Plaintiff wrote to the committee in general, because he did not know the names of the individual members. (Def. Mot.,[96], Plain, Depo., p. 52). Plaintiff did not keep a copy of his requests and he did not receive a response. (Def. Mot., [88], Plain. Depo., p. 21).

On June 8, 2019, Plaintiff fell while climbing out of his top bunk resulting in a laceration to his forehead and injury to his knee, hip, and elbow. (Amd. Comp., [18] p. 6).  Plaintiff admits he used his "dresser, table, and stool," rather than the ladder to get down from his bunk. (Def. Mot., [96], Plain. Depo., p. 14, 59).

A nurse's June 8, 2019 incident report states Rushville staff called her to respond to a resident who had fallen and was bleeding. (Def. Mot., [88], 6/8/19 RN Inc. Rpt).

The report claims Plaintiff stated, "he was attempting to climb down from his (top) bunk and stepped onto a stool which swivels, consequently losing his footing, falling and hitting his head on a rigid storage container." (Def. Mot., [88], 6/8/19 RN Inc. Rpt).

Plaintiff was taken to the Health Care Unit for treatment and then to an outside hospital where he received stitches for his forehead injury and various other diagnostic tests. (Def. Mot.,[96], Marc. Aff., p. 5).

Defendant Dr. Marcowitz first met with Plaintiff after his fall on Monday, June 10, 2019, and approved a low bunk permit. (Def. Mot.,[96], Marc. Aff., p. 5). Defendant Dr. Marcowitz says once a permit is issued, he does not have any role in assigning the resident a specific room or bunk assignment. (Def. Mot.,[96], Marc. Aff., p. 5).

Defendant Clinical Therapist Lodge served on the Rooming Committee. Defendant Lodge says when the committee is informed a resident has an approved low bunk permit, "it will assist in finding a proper roommate for the resident that would accommodate the permit." (Def. Mot., [88], Lod. Aff., p. 4). However, Defendant Lodge says the Rooming Committee was not provided any information concerning the Plaintiff in June of 2019 and therefore did not discuss his need for a different room assignment. (Def. Mot., [88], Lod. Aff., p. 3).

"It is my understanding that security staff moved (Plaintiff) to a room that could accommodate his low bunk permit at or before the Rooming Committee was aware that (Plaintiff) had been issued a low bunk permit." (Def. Mot., [88], Lod. Aff., p. 3).

3

Defendant Vincent was a grievance examiner at Rushville responsible for reviewing and responding to specific resident forms called Attempts to Resolve (ATR). (Def. Mot., [88], Vin. Aff., p. 1).

Plaintiff submitted an ATR on June 14, 2019, explaining he had fallen "coming down from my bed" and hit his head on the property box causing injuries. (Def. Mot., [88], Vin. Aff., p. 1; 6/14/17 ATR).  In the relief requested section of the ATR, Plaintiff stated: "Do something to make climbing in and out of the top bunk safe."  (Def. Mot., [88], 6/14/17 ATR).

Defendant Vincent says this is the only ATR he received from the Plaintiff regarding his June 8, 2019 fall. (Def. Mot., [88], Vin. Aff., p. 2).  The Defendant reviewed a nurse's incident report concerning Plaintiff's fall and provided his response: "It was reported resident was not climbing down properly but stepped onto a stool which swivels, consequently losing his footing and falling.  One must only use the ladder provided to enter and exit from the top bunk." (Def. Mot., [88], 6/14/17 ATR).

Defendant Vincent says he had no other communication with the Plaintiff concerning his fall and the Plaintiff did not talk to him at any time regarding a low bunk assignment. (Def. Mot., [88], Vin. Aff., p. 3, 4).

Plaintiff next submitted a July 3, 2019, grievance which stated only: "Methods of climbing in and out of the top bunk is dangerous. This problem needs to be fixed." (Def. Mot., [88], Sim. Aff., p. 1; 7/9/19 Grv.).  Plaintiff explained in his deposition: "[t]he simple fix, or the proper fix would be move the ladder down at the other end way from the shelf, and put up a safety bar to hang onto." (Def. Mot., [96], p. 19).

4

Defendant Grievance Examiner Simpson reviewed the relevant ATR and the Nurse's report concerning the fall.   The Defendant also noted medical records established Plaintiff was taken to the emergency room for treatment.   In addition, Defendant Simpson contacted medical staff and was informed the facility doctor had approved a low bunk permit. Finally, the Defendant says she "communicated with the Rooming Committee to confirm (Plaintiff) had been assigned to a low bunk." (Def. Mot., [88], Sim. Aff., p. 2). Defendant Simpson says she does not know the specific date Plaintiff was moved to a room with a low bunk, but it had already occurred when she responded to his grievance on July 17, 2019. (Def. Mot., [88], Sim. Aff., p. 2).

Based on her investigation, Defendant Simpson found the grievance was resolved and no further action was required.

The following additional facts were presented in the pending Summary Judgment Motion:

Defendant Scott was employed by the Illinois Department of Human Services (IDHS) as the Program Director at Rushville Treatment and Detention Center. (Def. Mot., [130], Scott Aff., p. 1).

On July 19, 2019, Defendant Scott agreed with Grievance Examiner Simpson's recommendation. (Def. Mot., [130], Scott Aff., p. 1). The Defendant says he is not required to conduct an independent investigation, and therefore his decision was based solely on Simpson's report. (Def. Mot., [130], Scott Aff., p. 2).  Defendant Scott adds he never had any communication with the Plaintiff concerning his request for a low bunk permit, nor Plaintiff's desire to move to another room.  (Def. Mot., [130], Scott Aff., p. 2).

5

Defendant Coleman-Weems is the Deputy Director of Forensic and Justice Services for IDHS and the Illinois Department of Mental Health. (Def. Mot., [130], Cole. Aff., p. 1). On September 19, 2019, Defendant Coleman-Weems reviewed Plaintiff's grievance and concurred with the prior decisions. (Def. Mot., [130], Cole. Aff., p. 2). The Defendant also is not required to conduct an independent investigation and relied entirely on the investigation and report of the grievance examiner. (Def. Mot., [130], Cole. Aff., p. 2). Defendant further states she had no communication with the Plaintiff concerning a low bunk permit or a request to move to another room. (Def. Mot., [130], Cole. Aff., p. 2).

IDHS employed Defendant Hankins as a "Public Service Administrator 6" at Rushville from 2006 through 2017. (Def. Mot., [130], Hank. Aff., p. 1). Defendant Perez was employed as a "Security Therapy Aide II" from 2007 through 2021. (Def. Mot., [130], Perez Aff., p. 1).

At times, Defendant Hankins and Perez served on the Rooming Committee. (Def. Mot., [130], Hank. Aff., p. 1; Perez Aff., p. 1). Rooming Committee members cannot approve a low bunk permit or determine who should be placed in the lower bunk. (Def. Mot., [130], Hank. Aff., p. 1; Perez Aff., p. 1). Instead, "qualified Healthcare and/ or clinical staff" make low bunk assignments based on "criteria established by those departments." (Def. Mot., [130], Hank. Aff., p. 2; Perez Aff., p. 2).

In addition, only medical staff can issue a medical permit for a low bunk based on the individual's specific medical needs. (Def. Mot., [130], Hank. Aff., p. 2; Perez Aff., p. 2).

Neither Defendant Hankins, nor Defendant Perez have ever spoken with the Plaintiff about his request for a low bunk permit, nor has either Defendant ever received any communication from the Plaintiff concerning a permit. (Def. Mot., [130], Hank. Aff., p. 2; Perez Aff., p. 2).

Defendant Perez says he participated in a Rooming Committee meeting on June 19, 2019. (Def. Mot., [130], Perez Aff., p. 2).  However, the Defendant confirms the committee did not discuss Plaintiff during this meeting. (Def. Mot., [130], Perez Aff., p. 2).  Defendant Hankins was no on the Rooming Committee in 2019. (Def. Mot., [130], Hank. Aff., p. 1).

### III. LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine dispute of material

fact exists when a reasonable juror could find for the nonmovant.  *Id.*

IV. ANALSIS

 Defendants Coleman-Weems, Hankins, Perez, and Scott argue Plaintiff cannot

demonstrate they violated his constitutional rights.  "[I]n order to hold an individual

defendant liable under § 1983 for a violation of an inmate's constitutional rights,

the inmate must show that the defendant was personally responsible for that violation."

*Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir.  2017). "A defendant will be deemed to have

sufficient personal responsibility if he directed the conduct causing the constitutional

violation, or if it occurred with his knowledge or consent." *Sanville v. McCaughtry*, 266

F.3d 724, 740 (7th Cir. 2001).

The only evidence before the Court concerning Defendants Scott and Coleman-

Weems demonstrates the two Defendants signed off on Plaintiff's grievance indicating

they agreed with the results of the investigation and found the matter was resolved. *See,*

*George v. Smith,* 507 F.3d 605, 609 (7th Cir.2007) ("Ruling against a prisoner on an

administrative complaint does not cause or contribute to the violation.").

Plaintiff's grievance did not mention the need for a low bunk permit or the

denial of a low bunk permit, and neither Defendant had any communications with

Plaintiff concerning a permit or changing his room assignment.

Defendants Perez and Hankins served on the Rooming Committee and Plaintiff

claims they denied him a low bunk permit prior to his fall, but there is no evidence

8

either Defendant knew about his request, and even if they did, neither Defendant could issue a medical permit for a low bunk.

In response to the Summary Judgment Motion, Plaintiff continues to argue the bunk beds at Rushville are unsafe for all residents which has led to frequent falls in the facility. Plaintiff says the Defendants have worked at Rushville for years and are aware of the problems. Even if Plaintiff's statements are correct, he did not have a pending claim based on the condition or safety of the bunk beds. Plaintiff instead had two claims based on a failure to provide a low bunk permit before and after his fall. *See* October 13, 2020 Case Management order; January 13, 2021 Text Order; January 20, 2021 Text Order; February 1, 2021 Text Order, February 8, 2021 Text Order; February 12, 2021 Text Order (orders stating surviving claims).

Plaintiff also again argues the facility doctor should have issued a low bunk permit due to his age and medical condition. However, the motion currently before the Court involves different Defendants.

Finally, Plaintiff says he has provided enough evidence to demonstrate the Defendants' "neglect." (Plain. Resp., [134], p. 7). As the Court has previously explained, "negligence or even gross negligence" is insufficient to demonstrate a constitutional violation. *See i.e.* May 4, 2020 Case Management order, p. 4-5; March 22, 2022 Summary Judgment Order, p. 15.

Based on the record before the Court, Plaintiff cannot demonstrate the four remaining Defendants were involved in his claims, knew he was requesting a low bunk

permit, or had the authority to approve a permit.  The Motion for Summary Judgment is granted. [130].

IT IS THEREFORE ORDERED:

1) Defendants Sharon Coleman- Weems, Joseph Hankins, Juan Perez, and Greg Scott's Motion for Summary Judgment is GRANTED pursuant to Federal Rule of Civil Procedure 56. [130].  The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.  This case is terminated, with the parties to bear their own costs.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective).

3) If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 3rd day of February, 2023.


s/James E. Shadid

_____

JAMES E. SHADID
UNITED STATES DISTRICT JUDGE